IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| HART CARE NRC, LLC, | : | |
| | : | |
| Plaintiff, | : | CASE NO. |
| v. | : | 5:13-CV-109 (CAR) |
| | : | |
| FREDERICA ACRES, INC., | : | |
| | : | |
| Defendant. | : | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

Currently before the Court is Defendant Frederica Acres, Inc.'s Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted. Having considered the Motion and responses thereto, Defendant's Motion [Doc. 5] is hereby **GRANTED in part** and **DENIED in part**. For the reasons explained below, Plaintiff's tortious interference with contractual relations claim is DISMISSED with prejudice; Plaintiff's remaining claims will go forward.

**STANDARD OF REVIEW**

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.[1] To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain specific factual matter, accepted as true, to 'state a

---

[1] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

claim to relief that is plausible on its face.'"[2] A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[4]

## BACKGROUND

Plaintiff filed its Complaint alleging that Defendant breached the parties' lease agreement and tortiously interfered with the contractual relationship Plaintiff had with its sublessee. In accepting Plaintiff's allegations as true, as this Court must on a motion to dismiss, the facts are as follows:

On April 30, 1992, Defendant, as lessor, and Plaintiff's predecessor-in-interest, as lessee, entered into a ten-year Lease Agreement to operate a nursing home located in Hartwell, Georgia.[5]  Before the ten years expired, Defendant and Plaintiff's predecessor entered into a Second Amendment to the Lease which modified the term of the Lease to twenty years, thereby extending the term of the Lease through April 30, 2012.[6]

---

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[3] *Id*.
[4] *Twombly*, 550 U.S. at 556.
[5] Compl. ¶¶ 6 & 7 [Doc. 1]; Lease Agreement, Compl., Ex. A [Doc. 1-1].
[6] Compl. ¶ 8; Second Amendment to Lease, Compl. Ex. B [Doc. 1-2].

Subsequently, Plaintiff's predecessor assigned all of its right, title, and interest to the Lease and the nursing home and health care business to Plaintiff.[7]

The Lease, as amended, contained a right of first refusal which gave Plaintiff, as Tenant, the right to purchase or re-lease the premises at the expiration of the Lease on the same terms Defendant, as Landlord, proposed to sell or lease the property to another.[8] Specifically, the Lease provided:

> Section 32. RIGHT OF FIRST REFUSAL TO PURCHASE OR RE-LEASE. During the term of this Lease, prior to the sale or leasing of the Leased Premises or any interest therein by the Landlord, or its successors or assigns, under the Lease, to any party other than Lessee, Landlord shall give Tenant written notice stating the specific terms on which it proposes to sell or lease the Leased Premises, whether resulting from an offer to purchase or re-lease the Leased premises received by Landlord or otherwise, together with a conformed copy of any such offer, and Tenant shall have fiftenn 915) days after receipt or refusal of receipt of such notice to elect to purchase or lease the Leased Premises or such interest therein on the same terms and conditions as set forth in such notice provided, that Tenant shall have either (i) thirty (30) days from such election; or (ii) the time required in the notice, whichever is later, to close upon the purchase to release the Leased Premises, on such terms and conditions within said fifteen (15) day period, same shall be null and void and of no further force or effect and landlord shall be free to sell or lease the Leased Premises upon such terms and conditions, provided, however, Tenant shall retain the right of first refusal to purchase or re-lease with respect to all future sales or re-leases.[9]

After the Lease was assigned to Plaintiff, Plaintiff entered into a Sublease with a third party, CHC–Hart Care Center, LLC, to operate the premises as a skilled nursing

---

[7] Compl. ¶ 9; Assignment and Assumption Agreement Dated As of August 9, 2003, Compl., Ex. C [Doc. 1-3].
[8] Compl. ¶ 12; Second Amendment to Lease, ¶ 1(c).
[9] *Id.*

3

home facility.[10]  Defendant acknowledged the Sublease and formally accepted CHC as the Sublessee for the property.[11]  Pursuant to the Sublease, the Sublessee agreed that it had no right to any purchase or option of the Leased Premises, or to any renewal, extension, renegotiation, amendment, assignment or replacement of the underlying Lease.  Specifically, the Sublease provided that

> (d) [Sublessee as] Tenant shall not have any right to amend or modify the Underlying Lease.  Tenant shall NOT have any right under any provision of this Lease to any purchase or option as to the fee title to the Premises; any purchase or option as to the fee title to the Premises and any renewal, extension, renegotiation, amendment, assignment or replacement of the Underlying Lease, all of which shall be exclusively reserved to landlord, and Tenant shall not interfere in any manner with, or seek to acquire, the foregoing opportunities which are reserved to [Plaintiff as] Landlord.
> (e) Tenant shall not have any right under any provision of this Lease or the Underlying Lease as to any purchase or option as to the fee title to the Premises;  any purchase or option as to the fee title to the Premises and any renewal, extension, renegotiation, amendment, assignment or replacement of the Underlying Lease, all of which shall be exclusively reserved to landlord, and Tenant shall not interfere in any manner with, or seek to acquire, the foregoing opportunities which are reserved to Landlord.[12]

In February 2012—approximately four months before the expiration of the Lease—Defendant's attorney advised Plaintiff's manager that, on behalf of Defendant, he had various conversations with the Sublessee's principals about entering into a new lease following the expiration of the present Lease, with a new entity to be formed by

---

[10] Compl. ¶ 10; Sublease between Hart Care NRC, LLC as Landlord and CHC – Hart Care Center, LLC, as Tenant Dated September 1, 2003, Compl., Ex. D [Doc. 1-4].
[11] Compl. ¶ 11; Letter accepting CHC-Hart Care Center, LLC as Sublessee, Compl., Ex. E [Doc. 1-5].
[12] Sublease, Art. 1, Section 1.4(d), Compl., Ex. D [Doc. 1-4].

the Sublessee's principals.[13]  The attorney also told Plaintiff's manager that Defendant was entertaining offers to extend or renew the Lease and that Plaintiff's manager should forward any such proposals from Plaintiff to him.[14]  Moreover, Defendant's attorney indicated that he had been engaged in conversations with the Sublessee's representatives about extending and/or renewing the Lease under a new legal entity.[15]

By letter dated February 15, 2012, Plaintiff effectuated an election of the right of first refusal contained in Section 32 of the Lease.[16]  Defendant failed to provide written notice of all proposals for transfer of the subject property and failed to honor Plaintiff's election of its right of first refusal.[17]

Instead, in March 2012, Defendant created a wholly owned subsidiary, Hart Care Center, Inc., for the purpose and aim of evading Defendant's contractual obligation to Plaintiff under the terms of the Lease.[18]  Effective May 1, 2012, the day after the expiration of the Lease, Defendant transferred some or all of its interest in the subject property to its wholly owned subsidiary.[19]  From May 1, 2012, to the present, Defendant contracted for the operation and management of the nursing home with an entity owned by or associated with the Sublessee.[20]

---

[13] Compl. ¶ 14(a).
[14] *Id.* at ¶ 14(b).
[15] *Id.* at ¶ 14(c).
[16] *Id.* at ¶ 15; Letter, Compl., Ex. F. [Doc. 1-5].
[17] Compl. ¶¶ 24 & 25.
[18] *Id. at* ¶ 17.
[19] *Id.* at ¶ 18.
[20] *Id.* at ¶ 19.

Plaintiff filed the current action against Defendant alleging claims for breach of contract, tortious interference with contractual relations, specific performance, and attorney's fees.  Thereafter, Defendant filed the instant Motion seeking to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted.

## DISCUSSION

**Breach of Contract**

Plaintiff contends that Defendant breached the Lease Agreement by failing to provide Plaintiff written notice of all proposals for transfer of the subject property and failing to honor Plaintiff's election of its right of first refusal.  Defendant argues Plaintiff's allegations do not satisfy the threshold *Twombly/Iqbal* pleading requirements and therefore fail to state a claim for relief.  The Court disagrees.

The factual allegations in this Complaint state a claim for breach of contract. Accepting the allegations as true, Defendant failed to provide written notice stating the terms on which it proposed to lease the subject property to a third party, in clear violation of the terms of the Lease.  Moreover, Plaintiff exercised its right of first refusal to re-lease the property on the same terms and conditions as proposed to the Sublessee which Defendant failed to honor.

Defendant's arguments that the Complaint must be dismissed because it fails to specifically allege the presence of a proposed sale or lease necessary to initiate the right of first refusal, are without merit. Indeed, Defendant's motion regarding the breach of

contract claims appears to be "another example of what *Twombly* and *Iqbal* have wrought—a compulsion to file a motion to dismiss in every case."[21] The rules of pleading "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."[22] Judicial inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which its rests."[23] Plaintiff has more than satisfied these pleading requirements. Thus, Plaintiff's breach of contract claims—and in turn its specific performance and attorney's fees claims—may proceed.

**Tortious Interference with Contractual Relations**

Plaintiff's tortious interference claim, however, must be dismissed. Plaintiff claims Defendant intentionally interfered with its contractual relationship with the Sublessee by causing the Sublessee to violate the anti-circumvention provisions of the Sublease. "In order to be liable for tortious interference, one must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract."[24] "One is not a stranger to the contract simply because one is not a party to the contract."[25] Indeed, "all parties to a comprehensive interwoven set of contracts are not liable for tortious interference with any of the contracts or business relationships."[26]

---

[21] *Meyer v. Snyders Lance, Inc.*, Case No. 4:12-CV-215(CDL), 2012 WL 6913724, *1 (M.D. Ga. Dec. 12, 2012).
[22] *Twombly*, 550 U.S. at 570.
[23] *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).
[24] *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 608 (1998).
[25] *Id*.
[26] *Galardi v. Steele-Inman*, 266 Ga. App. 515, 521 (2004).

Defendant in this case is clearly not a stranger to the contract at issue—the Sublease—or to the business relationship between Plaintiff and the Sublessee. The business relationship at issue here is that of lessor/lessee/sublessee; as such, they are all parties to an interwoven set of contracts surrounding the Lease and Sublease. Moreover, Defendant, as lessor, was an essential entity in the relationship between Plaintiff and Sublessee. Because there is no set of facts under which Plaintiff could prevail on a tortious interference claim against Defendant and any amendment would be futile, this claim must be dismissed with prejudice.

## CONCLUSION

In accordance with the foregoing, Defendant's Motion to Dismiss [Doc. 5] is hereby **GRANTED in part and DENIED in part**. Plaintiff's tortious interference is DISMISSED WITH PREJUDICE; the remaining claims may proceed. The stay of discovery in this case is LIFTED. In accordance with the Rules 16/26 Order previously issued by this Court [*See* Doc. 7], the parties must file their proposed scheduling and discovery order within fourteen (14) days of the date of this Order.

**SO ORDERED**, this 10th day of December, 2013.


S/ C. Ashley Royal
C. ASHLEY ROYAL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

SSH